Geraldine Corcoran, Plaintiff-Appellant, v. Edward D. Corcoran, Defendant-Appellee.

Gen. No. 50,917.

First District, Third Division.

January 26, 1967.

Bentley, Campbell, Du Canto & Silvestri, of Chicago (Joseph N. Du Canto, of counsel), for appellant.

Cusack and Cusack, of Chicago (John F. Cusack, James J. Cusack, Jr. and Robert E. Cusack, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a decree of divorce in favor of plaintiff-wife under which custody of the four minor children was awarded to defendant-father, and alimony payable to plaintiff was set at fifty ($50) dollars a week.

Plaintiff appeals the custody provision and the amount of alimony. With regard to the custody award plaintiff contends that she must be proven unfit as a mother to be denied custody; that she, the mother, should have been preferred despite her record of prior mental illness; and that the preference expressed by the children is entitled to great weight. Plaintiff also contends that in awarding alimony and barring plaintiff from the marital home the court erred in failing to require adequate proof of defendant's income and assets, and of plaintiff's needs and rights.

Plaintiff and defendant were married on October 27, 1947, and subsequently four children were born of the marriage. At the time of the hearing these children were 17, 15, 13 and 9 years of age; the eldest is a boy, the others are girls.

Plaintiff has a history of mental illness and hospitalization therefor. Shortly after the birth of the first child she was hospitalized for six weeks with a condition described as post partum depression. During 1958 plaintiff was hospitalized for a month at a private sanitarium where she received electroshock treatment. In June of 1959 Mrs. Corcoran was hospitalized at Mercyville for a few weeks and then was transferred to Elgin State Hospital where she remained until March of 1961. Beginning in December, 1961, she spent a month in a private hospital, returned home for a short period, and then returned to Elgin State Hospital, where she remained until July, 1962.

During her first eleven years of marriage plaintiff lived with defendant and the children in what defendant characterized as "a real family setup." There was no question but that for that period she had adequately cared for her children. After her release in July, 1962, plaintiff went to live with her mother, until May, 1963, at which time she went to St. Joseph's home for the aged. It is not clear whether she was employed or cared for at

St. Joseph's. Mrs. Corcoran's civil rights were restored to her in January, 1964.

Plaintiff testified that in June, 1964, her doctor told her she could return home if she was provided with a "companion" to help her over the "rough spots." Just what transpired between plaintiff and defendant thereafter is unclear, as the testimony was contradictory and somewhat indefinite, but plaintiff did not return to the marital home until June 29, 1965, when it was so ordered by the court during the pendency of this proceeding.

On March 11, 1965, plaintiff filed a complaint for separate maintenance; defendant responded on April 9, 1965, counterclaiming for divorce; on September 9, 1965, plaintiff filed an amended complaint for divorce. Upon trial plaintiff was granted the divorce and fifty ($50) dollars a week in alimony, and defendant was granted custody of the children.

█ Plaintiff and defendant agree that the best interests of the children are the prime consideration of the trial court in determining the question of custody. Serotzke v. Serotzke, 335 Ill App 485, 82 NE2d 375; Dunning v. Dunning, 14 Ill App2d 242, 144 NE2d 535; Schmidt v. Schmidt, 346 Ill App 436, 105 NE2d 117. Plaintiff goes further, however, and contends that the best interests doctrine requires custody to be awarded to the mother unless she is shown to be unfit. In Nye v. Nye, 411 Ill 408, 104 NE2d 218, the court said at page 414:

> "Under our divorce statute the court is clothed with a large discretion in determining to which parent a child will be given. It is usual in such cases, due to the tender years of the child and in consideration of its best interests, to entrust its care and custody to the mother, she being a fit and proper person to rear the child. (Miner v. Miner, 11 Ill 43; Draper v. Draper, 68 Ill 17.) The maternal affection is more

active and better adapted to the care of the child. Especially this is true in the case of a minor daughter, where the care and guidance of a mother's hand is doubly important. This principle has become so well fixed and followed in this State that this Court had not in recent years been called to rule upon it. Therefore, compelling evidence must be presented, proving the mother to be an unfit person, to cause the custody of her minor daughter to be denied her, or there must be a positive showing that to deny custody to the mother would be for the best interest of the child."

The above case is distinguishable from the one at hand in two apparent aspects. First, the Nye case dealt with a woman who had been denied custody originally because she was living with a man other than her husband, whereas the case at hand involves mental illness. Secondly, the mother in Nye introduced positive evidence of reform by showing that she had since married the man involved, and therefore was no longer conducting her affairs in an adulterous manner. Mrs. Corcoran presented no positive evidence of recovery other than statements by herself and her brother, both laymen in the field of mental health, to the effect that she was then able to properly care for her children. Defendant, on the other hand, refers us to Osborn v. Hufsey, 44 Ill App2d 157, 194 NE2d 556, (abstract), a case factually similar to Nye, in which the court said:

"On appeal in this Court it is the contention of the mother that such decree (denial of custody to her) was erroneous since there was no finding that the appellant was an unfit person, and that there was insufficient evidence otherwise to justify a change of custody.

"The trial Court found that the home of the mother was not a fit, suitable, or proper home for the minor

children and ordered a change of custody accordingly. This finding of the Court could have been justified by evidence as to the crowded conditions of the home and that the man to whom the mother was now married was a person of such character that children of tender years should not be associated with him (Serotzke v. Serotzke, 335 Ill App 485). It was unnecessary that the Court make a finding that the mother was an unfit person to have custody of the children."

■■■ We feel that in the instant case the trial court could have found that the plaintiff's history of mental illness added to a failure on her part to give medical evidence of recovery, justified that court in awarding custody to the father, about whom there was no question of ability to provide and care for the children.

■■■ Plaintiff next contends that prior mental illness of a mother from which she has recovered does not justify a denial of custody. In support of this position plaintiff cites numerous cases. While we do not disagree with this argument, we do not feel it is applicable here insofar as these cases are all distinguishable by expert medical testimony in each, showing the mother had recovered, was able to cope with the raising of children, and that the children would not be harmed in any way by her present condition. Mrs. Corcoran made no effort to prove her recovery by medical evidence of her present condition or of future expectations of recurrence or progress. The trial judge was able to observe the parties and hear their testimony, and to talk with the children. It has been generally held that this observation is a vital factor in the determination, and that the reviewing court should not disturb the findings unless they are palpably against the weight of the evidence. Kokotekian v. Kokotekian, 23 Ill App2d 171, 161 NE2d 712. Upon the record presented us in the instant case we cannot disagree with the trial judge's determination.

█ Plaintiff also contends that the preference of the children is entitled to great weight. The court in Oakes v. Oakes, 45 Ill App2d 387, 195 NE2d 840, in reference to a sixteen-year-old child's choice, said at page 390, "But it is clear to us that while her preference was not binding, it was intended to be a most important element in the determination of her custody. That is as it should be." However, in that case, as in others cited by plaintiff, it was not contended that either parent was unfit for custody purposes. The Corcoran girls expressed a desire to be with their mother, but none had any objection to remaining with their father. The court mentioned that it had talked with the children, thus hearing their preferences, and yet determined that it was in their best interests to stay with their father. We cannot say this finding was unsound. We feel therefore, that it was within the trial court's discretion to award custody to the father (in whose care they were throughout the period of the mother's hospitalization), regardless of the mother's release and the views of the children.

█ Plaintiff finally contends that the court should have required adequate proof of defendant's income and assets and plaintiff's needs before making the alimony award of fifty ($50) dollars a week. Plaintiff, in her complaint, alleged that she was then unemployed and without resources and that defendant earned in excess of two hundred ($200) dollars per week. Defendant, by answer, admitted the allegation as to his income but did not elaborate on the point. Although the court is to examine the circumstances of the parties in determining alimony (Canady v. Canady, 30 Ill2d 440, 197 NE2d 42), it can examine only what has been presented to it. Plaintiff's trial attorney was evidently satisfied with the allegation and admission regarding the amount of defendant's income as a basis for the trial judge's determination of the proper amount of alimony. During the trial that attorney said: "With the Court's permission, I will not

go into the question of support, the fact that she has no means of support, or the reasonableness and the amount of support. . . ."

 "The presumption is in favor of the regularity of the proceedings in the trial court and this presumption will obtain until overcome by a showing that error has been committed." Smith v. Smith, 36 Ill App2d 55, 60, 183 NE2d 559. In light of the above rule we cannot say that it was error for the court to make its determination without demanding evidence which plaintiff did not seek to present.

 Furthermore, although plaintiff was granted the divorce, it is not unreasonable that the court did not award her the family home but rather provided that she should remove herself and her belongings therefrom. The father was given custody of the children and it is understandable that they should be allowed to remain in the home in which they have been during the time of the mother's illness. It is difficult to see how plaintiff, without the four children, has need of the family dwelling. We cannot therefore find error in the court's decision on this matter.

Because plaintiff raised no convincing points on appeal regarding the custody, alimony and plaintiff's rights to the defendant's property, the decree must be affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.