GIOVANNA MULVIHILL, Plaintiff-Appellant, *v.* THOMAS N. MULVIHILL, Defendant-Appellee.

(No. 58001;

First District (5th Division)—June 7, 1974.

John R. Polk, of Chicago (George D. Karcazes and John T. Duax, of counsel), for appellant.

James B. Pritikin and Sudak, Grubman, Rosenthal & Feldman, both of Chicago, for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

On September, 1, 1971, plaintiff filed a complaint for divorce alleging that defendant had been guilty of habitual drunkenness. On October 26,

1971, defendant filed a counter-complaint for divorce alleging that plaintiff had been guilty of adultery. Both parties sought custody of the four minor children. On June 9, 1972, after a trial, the court granted a decree of divorce* on defendant's counter-complaint, awarded custody of the four children to defendant and dismissed plaintiff's complaint for want of equity. Plaintiff only appeals from that portion of the judgment giving custody to the defendant and denying her child support.

On appeal plaintiff's sole contention is that the award of custody to defendant is contrary to the law of Illinois and is against the manifest weight of the evidence.

Plaintiff and defendant were married in Chicago, Illinois, on May 4, 1957. During their marriage the parties had four children: Michael, born on October 15, 1958; Thomas, born on July 18, 1961; Mary, born on December 8, 1962; and Patrick, born on December 6, 1965. The parties ceased living together as husband and wife in September 1969 although they continued to reside in the same home.

The following pertinent evidence was also adduced: Defendant was called as a witness pursuant to section 60 of the Civil Practice Act and testified that he was a moderate drinker, consuming on the average nine cans of beer per week. He has taken the children to the doctor and when Michael was in the hospital, he visited him. Although prior to September 1969 he was generally satisfied with her supervision of the children, thereafter he became dissatisfied with his wife's care of the children. She was never a good housekeeper. He felt plaintiff kept a sloppy house with dishes stacked on the counter. It would take plaintiff a whole week to do a week's laundry, and she was never at home. When home, she spent 90 percent of her time on the telephone. Plaintiff physically abused the children, and he once saw plaintiff beat Tommy's arm with a wooden ladle, leaving the arm pretty red. In September 1969 plaintiff refused to have sexual relations with him. He had plaintiff followed and determined

---

* The court found in pertinent part:

"6. That the Plaintiff Counter-Defendant, GIOVANNA MULVIHILL, on the other hand, disregarding her marital vows and obligations, has been guilty of adultery on numerous occasions, all without cause or provocation on the part of the Defendant Counter-Plaintiff.

7. That in pursuing this adulterous conduct, the Plaintiff Counter-Defendant has been frequently absent from the marital home and not properly attendant to the needs of the minor children.

8. That the Defendant Counter-Plaintiff, THOMAS N. MULVIHILL, is a fit and proper person to have the care, custody, control, maintenance and education of the parties' minor children.

9. That it is in the best interests of the said minor children of the parties that custody of said minor children be awarded to the Defendant Counter-Plaintiff, THOMAS MULVIHILL."

that plaintiff committed adultery with one James Johnson. This adulterous conduct never took place at home or in the presence of the children.

Plaintiff testified on her own behalf: Defendant drank 3 to 5 times a week, and he would consume 25 to 30 cans of beer at one time and would become very drunk. He would frequent taverns two or three times a week. He never helped her with the children and never complained about her care of the children. She was an assistant den mother and a Scout leader. Defendant would treat the children with indifference, and she felt they were afraid of him. He has been promoted in his work and she did not know if he missed any work. She ceased having sexual relations with him because "I don't like him; I do not love him; * * * why should I sleep with him?" She never told him this reasoning.

In August 1971 she was arrested for battery. At this time she was trying to move out of the house. She chased Michael as he was running away from her and towards the house where defendant was inside. She had not told defendant what she was going to do. She had been under psychiatric care, but this had stopped approximately 4 weeks prior to trial. She explained that this was for marriage counseling.

During cross-examination it was brought out that plaintiff knew James Johnson. She admitted to having sexual intercourse with Johnson on at least 20 occasions. Plaintiff first met Johnson in 1967. She also admitted she was carrying on the adulterous relationship prior to the time when plaintiff and defendant bought a home and moved to Buffalo Grove, Illinois. Generally she would meet with Johnson during the evenings, but she never stayed out all night. She would usually stay out between 7 and 12 in the evening. While she was with Johnson, defendant would be at home with the children. Plaintiff stated that during these times defendant would not be caring for the children, "The children are old enough to care for themselves. Mr. Mulvihill does not care for them." Plaintiff later denied that the children are old enough to care for themselves. Defendant's mother has also stayed with the children.

Several other witnesses, including plaintiff's sister, testified for plaintiff, and other testimony was admitted by stipulation of the parties, including plaintiff's other sister and several neighbors. These witnesses generally characterized plaintiff as a good mother and a person fit to have custody of the children. They corroborated plaintiff in her participation in school activities with her children, and that she was a den mother and Brownie leader. On cross-examination when defendant's counsel informed these witnesses of plaintiff's admitted adultery and her numerous absences from the house during the evening hours, these witnesses responded that this would not change their opinion as to plain-

tiff being a fit person to have custody or being a good mother. Further, they would not judge someone else's morals. JoAnn Rathjen, a neighbor, testified for plaintiff. She repeated much of the previous testimony given by the other witnesses and additionally stated that she saw defendant drunk several times during the year, and that his children were present.

Defendant called to the stand a private investigator who witnessed many of the illicit meetings between plaintiff and Johnson. Lawrence Belmont, a co-worker of defendant, testified that he had known defendant for 1 year, and they share the same office. He also sees defendant socially and has never seen defendant drunk; he has seen defendant with his children, and defendant loves them. He felt the children love their father. Defendant coaches football and Little League baseball.

Randall Rathjen testified as a witness for defendant that he is a neighbor of the Mulvihills. He has never seen defendant drunk. He has seen plaintiff leave in the evenings and return around 11:30 or 12. Defendant is a good father. On cross-examination he admitted that the plaintiff baby-sat for his children. Defendant's mother testified that she sees her grandchildren every month, and if defendant got custody she would move into defendant's home and care for the children. On cross-examination it was brought out that she felt plaintiff loved the children. She felt that over the last few years plaintiff was not fit to have custody because of her frequent absences from the home and the large amount of time she spent on the telephone.

Finally, Michael Mulvihill, the parties' oldest child, took the stand on behalf of the defendant. At plaintiff's request Michael was interviewed by the trial judge in chambers. The trial judge then stated into the record that Michael has indicated without hesitation that he "* * * would prefer to be with his father. He feels that the other brothers and sisters ought to be with the father. In substance the reason for that was that he feels that the mother is extremely temperamental and uses excessive punishment. Beyond and above everything else she would leave the family residence repeatedly in the evening without any explanation. The children would not see the mother much in the evening."

OPINION

Plaintiff argues that it was against the manifest weight of the evidence to award custody of the four children to defendant. She contends that in Illinois the cases have enunciated a judicial preference for the mother when determining custody of children of tender years. Relying on this preference, she avers that the evidence demonstrates her to be a fit person to have custody, and that the court erroneously gave custody to defendant solely because of the fact of her adultery. She asserts that her adulterous conduct was not alone sufficient to deprive her of custody.

■■ In cases where the custody of the children is involved, the overriding consideration must be and is the best interests and welfare of the children. (*Cohn v. Scott*, 231 Ill. 556, 83 N.E. 191.) A court when making a determination as to the children's best interests must weigh a variety of factors. Undoubtedly, as plaintiff argues, an infant of tender years may benefit more by being placed in the custody of its mother rather than with its father. (*Draper v. Draper*, 68 Ill. 17.) The children at the time of the decree were 13½, 11, 9½ and 6½ years old and are now 2 years older. Whether their age and maturity were such as would bring this preference into operation was for the trial court to decide. Yet, even if invoked, this is just one factor among many which a court must look at when viewing the totality of the evidence presented.

The trial court in divorce proceedings is vested with a broad discretion in determining the custody of minor children. (*Wolfrum v. Wolfrum*, 5 Ill.App.2d 471, 126 N.E.2d 34.) "He has an opportunity to see the witnesses, test their credibility or want of credibility * * *" (*Landrey v. Landrey*, 13 Ill.App.2d 202, 204, 141 N.E.2d 405) and is far better able than this court to predict which parent will best care for the children in the future. Therefore, we will not reverse the findings of the lower court unless they are against the manifest weight of the evidence. *Carlson v. Carlson*, 80 Ill.App.2d 251, 225 N.E.2d 130.

■■■ The court had before it evidence of plaintiff's admitted adulterous conduct. Both parties agree that the moral climate in which children are to be raised is a valid consideration for the court to evaluate. Certainly plaintiff's adultery is a reflection on her moral values. Assuming, as plaintiff argues, that her prior conduct should be condoned, we believe that many of the authorities cited by plaintiff are distinguishable in that the record here reflects no evidence from which we could infer that plaintiff's conduct in the future will improve. (*Wolfrum.*) The court, following the procedure laid down in *Oakes v. Oakes*, 45 Ill.App. 2d 387, 195 N.E.2d 840, interviewed the oldest child in chambers and then placed into the record the child's preference for his father and his reasons for making the preference. This also was a factor to be considered. *Corcoran v. Corcoran*, 79 Ill.App.2d 328, 224 N.E.2d 611.

■■ The evidence also supported a conclusion that plaintiff was frequently absent from the home and her children during the evening hours; that she was somewhat untidy in the upkeep of her household; and that on one occasion she hit her child with a wooden ladle leaving his arm pretty red. There was also evidence showing the preparations defendant had made in the event he received custody which included the fact that his mother would move in to assist him. The court found that the best interests of the children would be served by giving custody

to defendant, and we feel that there was evidence to support such a determination. Under such circumstances we will not reverse the trial court who had a superior opportunity to view all aspects of the evidence. The judgment is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.