Iʀᴀ J. Mᴀʀᴄᴜs, Plaintiff-Appellee, *v.* Lᴏɴɴɪᴇ Mᴀʀᴄᴜs, Defendant-Appellant.

(No. 59060;

First District (1st Division)—November 18, 1974.

Mel Sloan and Stephen J. Schlegel, both of Chicago (Joseph W. Lascaro, of counsel), for appellant.

Gary M. Elden, of Kirkland & Ellis, of Chicago (Anthony J. Pauletto, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Bradley Marcus, the child who is the central figure in this regrettable litigation, was born August 31, 1970. On January 13, 1972, in the circuit court of Cook County, his parents, Ira J. Marcus (father) and Lonnie Marcus (mother), were divorced on the ground of mental cruelty. By agreement of the parties, custody of the child was vested in the mother subject to further orders of the court with permission to remove the child from the jurisdiction and subject to specified reasonable and liberal rights of visitation and vacation with the child by the father. This judgment contemplated removal of the mother and the child to Phoenix, Arizona, and the father agreed to pay the mother a fixed sum for this purpose.

After considerable litigation, which will be later described, the trial court entered an order granting custody of the child to the father. The mother has appealed from this order. The contentions raised in this court by the respective parties will be stated at a later point.

On September 8, 1972, the father filed a verified petition in which he prayed permanent custody of the child. The theory of this petition was that the mother was not a fit person to have custody and that a substantial change in circumstances required a change in custody. The mother filed an answer to this petition which was basically a specific denial thereof as regards the charges made. Lengthy hearings were held by the trial court prior to entry of the order appealed from. A careful examination of the entire record enables us to state in summary the following facts which are, in our opinion, pertinent to the merits of the situation.

After the divorce, the mother and child moved to Phoenix, Arizona. The mother's sister, married but separated from her husband, lived in a townhouse which had been purchased by her parents. The mother had

little or no income at that time other than the payments specified in the judgment for divorce.

The father is a practicing lawyer in Chicago, associated with his sister's husband. After the divorce, he maintained his own place of residence. The father had no communication with the mother or child, beyond making required payments by mail, from the divorce in January of 1972 until June of that year. He then visited them on the way home from a vacation. At that time, in his opinion, the child was in good health, apparently well cared for and looked very beautiful. At the end of that visit, the father took the child back to Chicago with him for 1 month. The child lived with the father's sister. She and her husband maintain a good home with adequate facilities in a suburban area of Chicago. They live with their three children of school age, all older than the child here involved. In July of 1972, the father returned the child to the mother in Phoenix. She and the child then moved to the home of her parents in Wichita Falls, Texas. The mother's sister, in due course, left the home in Phoenix.

In August of that year, a dispute occurred between the mother and her father as a result of which she and the child changed their residence to the home of a lawyer (some 43 years old) living in Wichita Falls. The only other person living there was a young lady (some 21 years old), a friend of the lawyer. During August of 1972, the mother accompanied this lawyer on a long automobile trip which took about 6 days. The reasons for and the circumstances surrounding this trip were a source of considerable dispute in the testimony and in the briefs before this court, as were all of the remaining facts with reference to the activities of the mother during this time which she spent in Texas and on the trip.

The second anniversary of the birth of the child (August 31, 1972) occurred during this trip. The father attempted to reach the child by telephone and eventually spoke to the lawyer's young lady friend in whose custody the child had been left. Stating the ultimate facts with brevity, the evidence shows that the father went to Wichita Falls, located the child and took temporary custody. In due course, he brought the child back to Chicago to live in his sister's home.

All of these facts were brought out by the testimony of a number of witnesses. In addition, the court heard testimony of two psychiatrists: Dr. Robert Bussell, appointed by the court, and Dr. Abraham Jackman, retained by the mother. Dr. Bussell interviewed and spoke to many of the interested parties, including the father and mother. Dr. Jackman had only the benefit of a written report from Dr. Bussell and one interview with the mother. Dr. Bussell reached the conclusion that both the father and the mother were immature. He found the father

slightly more mature than the mother and basically more stable, as well as "less neurotically involved" with his sister than the mother with her parents. He recommended that the father have custody of the child. Dr. Jackman agreed generally with, or at least did not disagree with, the basic findings of his colleague's report but reached a different conclusion. In his opinion, the mother had given the child proper and adequate care, and removal of a child of that age from the mother would be harmful to the child.

The order appealed from (entered December 11, 1972) found that the mother had engaged in a course of conduct which was contrary to the best interests of the child and that there was a substantial change in circumstances since the divorce which warranted a change in custody of the child for his own best interests. Accordingly, the judgment for divorce was modified by awarding custody and control to the father on condition that he and the child continue to reside within the metropolitan area of Chicago. The order also provided that the child should continue to reside in the home of the father's sister and her husband. The father was given 90 days within which to take up residence with the child on a permanent day-to-day basis. Elaborate directions were set up in this order with reference to visitation of the child by the mother. These latter provisions are not specifically criticized by either of the parties. Shortly thereafter a motion supported by affidavits was made by the mother to vacate the order appealed from. An answer to the motion, also supported by affidavits, was filed in behalf of the father. This motion was denied in due course.

In the lengthy briefs filed by the parties, the basic contentions made by the mother are: that the ruling appealed from which changed custody of the child was against the manifest weight of the evidence and contrary to the best interests of the child; and that prejudicial error occurred when the trial court required a medical examination of the parties on its own motion. The father contends that the best interests and welfare of the child require that he be placed in the custody of the father and that no error occurred in connection with the psychiatric examination and evidence.

We will consider first the issues regarding the use of psychiatric testimony. This contention is actually presented in three separate subdivisions: the court should not have appointed the psychiatrist on his own motion; no issue was raised by the pleadings regarding the mental or emotional condition of the parties so that the manner and purpose of the appointment was improper; and the court erred in reading and considering the psychiatric report.

■■ As regards the first of these contentions, the record shows that

the parties, by their attorneys of record, freely consented in open court to the appointment of a psychiatrist by the court. The mother's counsel cooperated actively with the court in this regard. Not only did her counsel then avail themselves of the doctor's report during trial, but she herself by her attorneys retained the services of Dr. Abraham Jackman, the other psychiatrist who testified. Consequently, this issue has been effectively waived for purposes of appeal. (*Moynihan v. Moynihan,* 9 Ill.App.3d 520, 525, 526, 292 N.E.2d 105.) In addition, the language of the Supreme Court rule specifically vests discretion in the court to order a psychiatric examination and report during trial. (Ill. Supreme Court Rule 215(d)(2), 50 Ill.2d R. 215(d)(2).) We find no error in appointment of the psychiatrist by the court.

█■█ In addition, the physical and mental condition of both parents is necessarily a material issue in cases involving custody of a child. Since the welfare and best interests of the child are compelling and paramount, it would seem that both parties would welcome an evaluation by qualified and impartial professional experts. Furthermore, in this situation, as in other cases in which expert opinions are used by the court, no harm is done by the expression of expert opinion bearing directly upon the ultimate issues. The trial court "is not required to accept the opinion of the expert * * *." (*Merchants National Bank v. Elgin, J. & E. Ry. Co.,* 49 Ill.2d 118, 122, 273 N.E.2d 809.) Thus, in a case involving custody of a child, this court has held that receiving the opinion of a psychiatrist "would not usurp the decision-making function of the court." *Filipello v. Filipello,* 130 Ill.App.2d 1089, 1095, 268 N.E.2d 478.

██ As regards the final portion of this contention, the report of the psychiatrist, Dr. Bussell, was made available to all parties but was not technically admitted in evidence. It was, however, made a part of the record for review by this court. This was partly caused by the fact that the mother used the report as a basis for a hypothetical question which her counsel asked her own psychiatrist. In addition, the report was evaluated and commented upon favorably, except for the conclusions it reached, by the mother's own expert witness.

Finally, we will presume here that the trial court considered only proper evidence in arriving at the result appealed from. (*Reese v. Melahn,* 53 Ill.2d 508, 292 N.E.2d 375.) It remains next to consider the contentions of the parties with reference to the merits of the situation.

██ The legal principles involved in judicial determination of custody of children are in themselves necessarily simple. By the very nature of these situations, each one is different and only the most general principles exist for the guidance of the trial and reviewing courts. It must be the sole objective of the court "to reach a decision designed to protect the

child's best interests." (*Patton v. Armstrong*, 16 Ill.App.3d 881, 882, 883, 307 N.E.2d 178.) The custody of a child should be awarded to any person only where such action is "consistent with the welfare and best interests of the child." *People ex rel. Morris v. Morris*, 44 Ill.2d 66, 68, 254 N.E.2d 478, and additional cases there cited.

██ In the case before us, the original judgment for divorce gave the mother custody of the child. This was done by agreement of both parents. Under these circumstances, and since the father sought to modify that arrangement in the trial court and to change custody, the burden rested upon him to prove either that the mother was "unfit to retain custody or that a change of conditions makes a change of custody" in the best interests of the child. (*Vysoky v. Vysoky*, 85 Ill.App.2d 306, 309, 310, 230 N.E.2d 3.) It follows, therefore, that it was the duty of the trial court to hear and weigh all of the available evidence and to determine if the mother was an unfit person to retain custody of the child, or, alternatively, whether there had been some change of conditions or circumstances which required a change of custody for the benefit and welfare of the child.

██ In reviewing orders bearing upon child custody, it is also the duty of this court to give constant and unswerving attention to the best interests of the child. However, in view of the particular importance of weighing the evidence and determining the character of the conflicting parties in this type of case, it is our duty to entrust the trial court with broad discretion. The trier of fact has significant opportunity to observe both parents and the child and thus is able to assess and evaluate their temperaments, personalities and capabilities. This is a vital and important link in the chain of judicial decision. (*Corcoran v. Corcoran*, 79 Ill.App.2d 328, 333, 224 N.E.2d 611.) We should not disturb the determination of the trial court in this type of case unless it has resulted in manifest injustice or is against the manifest weight of the evidence. These basic and important principles are well brought out in *Vysoky v. Vysoky*, 85 Ill.App.2d 306, 311, 230 N.E.2d 3, and in *Sorenson v. Sorenson*, 10 Ill.App.3d 980, 982, 295 N.E.2d 347.

As a final cautionary matter, it should be noted that there is today no inflexible rule which requires that custody of children, especially of tender age, be vested in the mother. Equality of the sexes has entered this field. The fact that a mother is fit is only one facet of the situation and, standing by itself, it does not authorize a denial of custody to the father, when this appears necessary because of other considerations. *Braun v. Goodman*, 3 Ill.App.3d 1002, 1005, 279 N.E.2d 177; *Carlson v. Carlson*, 80 Ill.App.2d 251, 255, 225 N.E.2d 130; Ill. Const. (1970), art. I, § 18.

■■ It is next necessary to apply these wise and established principles to the record before us. We cannot find from this record that the mother is unfit to have custody of the child. The trial court did not reach that conclusion and neither do we. In our opinion, it is apparent that the mother used faulty or perhaps immature judgment in discharging her duty as regards care of the child. Although her intentions may have been above criticism in leaving the child and departing upon a lengthy motor trip in the company of a person whom she knew for a comparatively short time, mature judgment based upon the welfare of the child would not approve of this type of conduct. She also displayed a lack of judgment in the selection of the person with whom she left the child. This was done virtually by chance and without the exercise of careful and deliberate discretion.

■■ However, a critique of her judgment was not the issue before the trial court nor is it the issue before us. The trial court properly considered whether or not there had been a change of circumstances in the lives and surroundings of this mother and father which would require a change in the custody of the child for his best interests and welfare. It was the duty of the trial court to confine the inquiry to the best interests of the child as formulated at the time of the hearing. We can hardly be reminded with excessive frequency that in cases of this type the best interest and welfare of the child are "the overriding consideration" (*Mulvihill v. Mulvihill,* 20 Ill.App.3d 440, 444, 314 N.E.2d 342) and the "guiding star" (*Nye v. Nye,* 411 Ill. 408, 415, 105 N.E.2d 300) as well as the "paramount issue" (*Breedlove v. Breedlove,* 5 Ill.App.3d 774, 776, 283 N.E.2d 919).

■■ When this matter was heard, the mother did not know, and could not determine, whether she would return to her parents' home in Texas or whether she would attempt to choose another place of residence. Apparently by then her home with her sister near Phoenix was no longer available. The question of residing with her parents seems unfeasible in view of the fact that when she last attempted this she found herself obliged to leave the parental home after approximately 2 weeks. As regards the choice of another place of residence, this mother had no assets of any consequence, no profession, no education or experience which would enable her to earn her own way and to provide a proper home for the child apart from basic support. No amount of good intentions by themselves can suffice to overcome these insuperable handicaps.

As regards the father, he too was described by the psychiatrist as immature but to a lesser degree. He also appears well-intentioned as regards the future welfare of the child. It is true that this time would necessarily be spent to a large degree in his professional life. However,

it cannot be denied that the record shows that his married sister had the ability and the means to provide a stable and secure home environment for the child and the father. According to the decree as worked out by the trial court, the father would be required to live with the child and with his sister in order to retain custody of the child. The trial court made it admirably plain that he would give careful consideration to any violation of this decree in future orders regarding the custody of the child. We approve of this point of view.

■■ These considerations seem to be most important and decisive in the result here reached. It seems basically essential for this child to have the benefit of a stable and secure home with his paternal aunt and uncle and the company of three other children, his cousins, slightly older than he. Added to this would be the important realization that his father would be a part of the same household with ample opportunity for companionship between the two. The impartial observer cannot help but feel that this type of situation is manifestly more beneficial to the child than a life of complete uncertainty.

■■ As shown, the presumption in favor of the result reached by the trial court is always strong and compelling in this type of case. The trial judge here was most careful and patient in hearing all of the lengthy evidence and arguments reflected by this record. In our opinion, he did everything within his power to arrive at a proper result, and apparently these efforts have proved successful. Despite the able arguments of counsel for the mother, we do not feel justified in reversing or changing the order as entered by the trial judge. Accordingly, the order appealed from will be affirmed.

Order affirmed.

EGAN, P. J., and BURKE, J., concur.