*In re* CUSTODY of MICHAEL ANTHONY SANTOS.—(LUIS SANTOS, JR., Petitioner-Appellant, *v.* JACQUELINE SANTOS, Respondent-Appellee.)

Third District    No. 80-401

Opinion filed June 10, 1981.

Roger C. Elliott, of Momence, for appellant.

No brief filed for appellee.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

The parties to this action, Jacqueline Santos, plaintiff-appellee, and Luis Santos, Jr., defendant-appellant, were divorced on April 11, 1977. At that time, custody of their only child, Michael Anthony (Tony) Santos, then age two, was awarded to the plaintiff subject to reasonable visitation by the defendant.

On June 25, 1980, the two petitions which are at issue in this appeal were filed by the defendant. The first petition sought to have custody of Tony Santos awarded to the defendant, and the second requested a substitution of judge from Judge Dyer. Both of these petitions were denied by Judge Dyer.

■■ Apparently for financial reasons, the plaintiff-appellee has not filed a brief with this court. Although a court of review should not be compelled

to serve as an advocate for the appellee nor to search the record for the purpose of sustaining the judgment of the trial court, where, as is the case here, the record is simple and the claimed errors are such that the court can easily decide them without benefit of an appellee's brief, the reviewing court will decide the merits of an appeal. (*First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.) Accordingly, we will address the issues raised by the defendant-appellant.

■■ The defendant first questions whether the trial court wrongfully denied his petition for substitution of judge. Section 1 and 2 of the venue act (Ill. Rev. Stat. 1979, ch. 110, pars. 501, 502) provide for an absolute right to a change of judge before a judge has ruled on any substantive issue. However, after a substantive ruling, a party seeking such change must demonstrate actual prejudice on the part of the judge. *American State Bank v. County of Woodford* (1977), 55 Ill. App. 3d 123.

In the case at bar, the record discloses that Judge Dyer is the only judge who has ever had any involvement with this case. On March 2, 1977, he entered an order pertaining to temporary child custody and support and on April 11, 1977, he entered the decree of divorce.

Defendant asserts, however, that a post-decree petition for child custody modification is a new proceeding. Thus, he argues, he is not debarred from asking for a substitution of judge on the grounds that the judge has made prior substantive rulings. If, indeed, a post-decree petition in a divorce case is a new proceeding, his position is correct. This is so because if it is, by definition, a *new* proceeding, then it cannot be said that a judge has made prior substantive rulings in this case. The case of *McPike v. McPike* (1882), 10 Ill. App. 332, was decided in 1882. It established the rule that a post-decree custody modification petition following a divorce case is a new proceeding. The rule has been adhered to in other cases decided by our appellate courts but has never been passed on by our supreme court. It deserves a fresh examination for two important reasons. First of all, it flies in the face of reality. A post-decree petition for modification of child custody involves a redocketing of the original divorce proceeding. It carries the same case title and the original file number. The clerks of court use the same court file jacket. New and additional pleadings are simply filed seriatim following the older pleadings. The parties are identical. The children are the same. Nothing has changed but the passage of time and the claim of petitioner that conditions now dictate a change of the prior court order. The petition for modification is a petition to modify a prior order. It is not a petition for child custody springing up spontaneously. It is grounded in the prior order and seeks its modification. There is room for disagreement as to

whether or not a party should be entitled to a different judge in post-decree divorce proceedings. As is discussed below, there should be no such entitlement. However, regardless of one's views of such a policy question, and even if one were to support such a policy, it must be stated that it is dishonest to reach such conclusion by declaring as a matter of fact that post-decree divorce matters are new proceedings. They aren't. They are simply an extension of the same proceedings. To say otherwise is to propagate a sham. It is time that this issue is faced squarely and honestly. *McPike* and the cases relying on *McPike* are simply wrong. They rely on a false premise.

Aside from its false premise, the result reached in *McPike* is undesirable for procedural reasons and for demographic reasons. Procedurally speaking, to allow a litigant who loses his point in a divorce decree to turn right around and file a post-decree proceeding before a new judge is to encourage and invite both judge-shopping and trials *de novo* in matrimonial matters. Far from encouraging such practice, the courts should actively discourage it. Parties are entitled to their day in court certainly. But they are not entitled to shop for a new judge so that a litigated matter can be relitigated *de novo*. Divorce litigation now ranks as one of the leading consumers of judicial time and manpower. In 1882, when *McPike* was decided, divorce and post-divorce litigation were a minor part of the business of the courts. Divorce filings nationally were running at approximately 15,000 per annum. Now, almost 100 years later, divorce filings in this country have reached 1,200,000 per annum; an increase of 8000%. This demographic change, standing alone, should warrant a fresh analysis of trial practice procedures in this area of the law.

In addition to the foregoing, it must also be noted that in the post-decree proceedings, the motion for substitution of judge was filed on June 25, 1980. Defendant's petition to modify judgment for divorce was filed two days previously on June 23, 1980. In the petition to modify, defendant requested an investigation and report concerning custodial arrangements for the child pursuant to section 605 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat., ch. 40, par. 605). Also on June 23, 1980, defendant requested a temporary injunction to restrain the mother from removing the minor child of the parties from the jurisdiction of the court. On June 25, 1980, the case was called for hearing. Without insisting that the motion for substitution of judge be first considered, defendant allowed Judge Dyer to deny his request for investigation and report and further consented to the entry of a temporary injunction by Judge Dyer restraining the mother from removing the child from the jurisdiction of the court. Not until the next day, on June 26, 1980, was the motion for substitution of judge called for hearing. It was denied. Thus, prior to the

presentment of the motion for substitution of judge, and without objection from defendant, Judge Dyer ruled on two matters of substance in the post-decree proceedings.

Parenthetically, we also note the correctness of the trial judge's position that actual prejudice must be demonstrated to warrant a change of venue where the petition has not been timely made. No such showing was made in the present case.

■■ The defendant's second and final contention is that the denial of his petition to have custody of Tony Santos awarded to him was erroneous. Based on a careful review of the evidence preserved in the record, we hold that the denial of the defendant's petition was not against the manifest weight of the evidence nor palpably erroneous.

In child-custody cases, the decision reached by the trial court is always strong and compelling. (*Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 320 N.E.2d 581.) This is so since the trial court, rather than the reviewing court, is in a better position to evaluate the credibility of the witnesses and the needs of the children. *Masterson v. Masterson* (1976), 40 Ill. App. 3d 201, 351 N.E.2d 888.

Here the salient facts revealed that both parties had remarried since their divorce in 1977. The defendant and his new wife live in their home in New Bedford, Indiana, with her two sons by a previous marriage. The sons' ages are four and six, making them suitable companions for Tony Santos, now age five. The defendant is employed as a part-time mechanic and goes to a technical school in the evenings. From October 1979 until late June 1980, Tony spent most of his time, except for a period of seven weeks in February and March, with his father. During this period of time, Tony adjusted well to his new environment and to his stepbrothers. Although it is subject to some dispute, there is evidence that Tony stopped wetting the bed and stuttering while staying with his father. Some dispute also exists regarding the purposes for the extended stay at the defendant's home, although it was apparently agreed to by both the defendant and the plaintiff.

The plaintiff remarried in November 1979 but quickly experienced difficulties with her new marriage. She moved to Glendale, Arizona, in April 1980 without her second husband and presently lives with her mother in a two-bedroom apartment. She testified that Tony would share her room, and that the apartment complex housed numerous children and had ample playground facilities, as well as a swimming pool. The plaintiff has made arrangements with a neighbor to look after Tony, while she works as a cashier in a pizza parlor.

Based on this testimony, the trial judge denied the defendant's petition for a change of custody on the basis that none of the three criteria

found in section 610(b) of the Illinois Marriage and Dissolution of Marriage Act had been met. Section 610(b) provides as follows:

"The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:

(1) the custodian agrees to the modification;

(2) the child has been integrated into the family of the petitioners with consent of the custodian; or

(3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him." Ill. Rev. Stat. 1979, ch. 40, par. 610(b).

Despite the defendant's attempts to demonstrate that Tony Santos has been so integrated into the defendant's family life that to return the child to his mother in Arizona would be detrimental to his wellbeing, we cannot say that the trial judge's ruling was against the manifest weight of the evidence. We note that provisions have been made for a three-month period of visitation for Tony each summer with the defendant. These arrangements should facilitate Tony's adjustment to and integration with the lives of both his parents.

Child-custody disputes are never very palatable, but in the present case, the trial court at least attempted to accommodate the wishes of parents, both of whom love their child and want to assume the responsibility for his upbringing. This situation stands in marked contrast to many where a child is unwanted by one or even both parents. Hopefully, the resolution of the custody arrangements regarding Tony Santos will be accepted and carried out in a manner beneficial to all concerned, and particularly to the benefit of the minor child whose welfare is at issue here.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Kankakee County.

Affirmed.

SCOTT, P. J., and BARRY, J., concur.