LINDA PRINCE, Petitioner-Appellant, v. JAIME HERRERA, Respondent-Appellee.

First District (5th Division)    No. 1—92—4499

Opinion filed April 22, 1994.

Rory T. Dunne, of Peterson & Ross, of Chicago, for appellant.

Daniel T. Coyne and Mark B. Wisniewski, both of Chicago, for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Petitioner Linda Prince and respondent Jaime Herrera were divorced in 1989, at which time they agreed that they would have joint custody of their daughter, Christina, who was born on June 28, 1986. In 1992, Linda and Jaime each sought sole custody of Christina since joint custody was no longer practical. After a hearing on this matter, the trial court awarded sole custody of Christina to her father. Linda appeals from this trial court decision.

Linda testified at trial that she resides in an apartment in Chicago with her husband, Dennis Pin. Dennis and Linda were married in December 1991. Dennis' mother, Bianca Pin, her husband, and two adult children live 10 minutes away from Linda's apartment. Bianca Pin takes care of Christina when she is not in school and Dennis and Linda are at work. While Bianca Pin cares for Christina, Christina plays with Dennis Jr., Bianca Pin's grandson.

Linda testified that she paid for Christina's curriculum and day care at Kiddy Care and that Christina spends six hours a day in day care and three hours a day in class. Linda stated that even though she is aware that Christina could have been taken care of at Jaime's house in the afternoon, she would rather leave Christina with strangers at day care because it is a structured program. Linda also testified that she never asked Jaime to reimburse her for the cost of Christina's schooling and day care. Linda stated that she intends to enroll Christina at Our Lady of Fatima school.

Jaime Herrera testified that he lives in Chicago on the second floor of a two flat owned by his sisters. Jaime's sister Olga Porras, her

husband, and their son live in the first-floor unit and Jaime, Christina and Jaime's mother live on the second floor. When Jaime is at work, his sister, Olga Porras, or his mother takes care of Christina. Since the divorce, Jaime has not missed any of his visitation. Jaime testified that he registered Christina for school. The school is two blocks away from his house and he would bring Christina to school in the morning and his sister would pick Christina up in the afternoon. Jaime testified that Christina does not display any adverse behavior and her behavior has not changed over the last couple of years.

Jaime testified that there is nudity in Linda's home, that Dennis Pin is present in front of Christina in his underwear, and that Linda and Dennis fight and one time Linda kicked Dennis out of the house. Jaime testified that he once charged Linda's husband Dennis with assault, and that Dennis was found not guilty. Jaime brought police to Linda's house last Christmas to obtain custody of Christina. No charges followed that incident.

The trial court also heard the testimony of Andre Johnson, a Cook County supportive services case worker. Mr. Johnson issued a report after he had interviewed and observed Christina in both parents' households. Mr. Johnson testified that he spent approximately two hours in each home. Mr. Johnson testified that Christina was very playful and interactive with family members in both homes. Mr. Johnson also testified that he contacted Christina's school in order to verify Linda's allegation that Christina frequently missed school when she was in her father's care. Mr. Johnson found out that since 1991, Christina had missed 10 or more days of school while in her father's care. Jaime explained to Mr. Johnson that on one of those occasions, Christina stayed home to see some relatives visiting from out of town and on one or two other occasions, Christina was ill. Jaime gave no excuse for Christina's other absences.

Mr. Johnson testified that he interviewed Jaime, and Jaime informed him that Linda had several male companions around Christina in the past and that Linda had sexual relations with these men. Linda denied these allegations, and consequently, Mr. Johnson found these allegations unfounded. Jaime told Mr. Johnson that Christina told him that Linda and her current husband had an altercation and that Linda had been stabbed. Linda denied these allegations and sent Mr. Johnson a letter from her doctor stating that she had no stab wound or any other injury to her body. Mr. Johnson therefore concluded that Jaime's allegation was unfounded. Jaime told Mr. Johnson that Linda was an unfit mother, she had physically abused Christina and that he had reported Linda to the Department of Children and Family Services (DCFS). Mr. Johnson

received a computer printout from DCFS, listing all past and current cases and found neither parties' name on the printout.

During Mr. Johnson's interview with Linda, she informed Mr. Johnson that Jaime, as well as other family members, make derogatory comments about her in Christina's presence. Mr. Johnson found no evidence of this. Linda informed Mr. Johnson that Jaime had not taken Christina to school on several occasions and that, on one occasion, Jaime had forgotten to pick Christina up at school and arrived late to pick her up.

Mr. Johnson recommended that Linda be Christina's primary care giver based primarily on the fact that Jaime was unable to get Christina to school on several occasions and also on the fact that Jaime made unfounded allegations against Linda. Mr. Johnson was also influenced by his determination that Linda had been primarily responsible for Christina's education. Mr. Johnson noted in his report that Jaime "would go to any length to destroy [Linda's] character" and that Jaime's "behavior may eventually have a negative influence on Christina's overall welfare." Mr. Johnson recommended that Jaime immediately receive counseling to resolve past issues.

Dr. Schulman, a child psychologist, met with Linda and Christina and with Jaime and Christina and then filed a written report and testified at trial. During the meetings, Christina sat on each parent's lap, which indicated to Dr. Schulman that she was bonded to each parent. Dr. Schulman stated that Christina clings to her mother possibly because she feels more comfortable to express her feelings when with her mother. Dr. Schulman determined from his analysis of Linda and Jaime that they both conducted themselves entirely within the normal limits. According to Dr. Schulman, Christina was comfortable with both parents, but more vocal with Jaime. Dr. Schulman found Linda to be dedicated to Christina and concerned about her future. In addition, Dr. Schulman found that Linda has greater sensitivity, understanding and ability to discern Christina's problems.

Linda reported to Dr. Schulman that Christina suffers from nightmares. Jaime told Dr. Schulman that Christina had no nightmares while at his home. According to Dr. Schulman, Christina may have nightmares when with her mother, but not when with her father, because she is more comfortable with her mother. Dr. Schulman was skeptical of Jaime's report that Christina exhibited no difficult behavior while at his house since it is normal for children that age to exhibit some difficult behavior at times. Dr. Schulman stated that the fact that Christina has tantrums while in her mother's presence and not in her father's did not play into his recommendation.

Linda reported to Dr. Schulman that Christina accused her stepfather of trying to drown her, yet the next week asked him to take her to the beach. This indicated to Dr. Schulman that Christina says things that are untrue. Dr. Schulman stated that it is normal for a six-year-old to lie and look angelic while doing so, since a conscience is not developed at that age.

Linda told Dr. Schulman that Christina is jealous of her stepfather, and if Linda shows attention to Dennis, Christina tries to intervene because she wants attention. According to Dr. Schulman, this is not unusual in a relationship between a parent and a stepparent.

Dr. Schulman testified that Christina's statement that she was hit by various people in her mother's house was made only in her father's presence and Christina did not act like a child who had been hit. Dr. Schulman stated that Christina may have made these statements in her father's presence in order to curry her father's favor or Christina may have been rehearsed to say this.

Christina said, in her father's presence, that she would prefer to go to school by her father's house. Dr. Schulman placed little weight on Christina's preference since she only expressed this preference while in her father's presence. During this meeting Christina stated that "he [Dennis] is my mother's husband. He's mean. He hits me a lot." Christina also told Dr. Schulman that her mother and her step-grandmother hit her, but her father does not hit her.

Jaime told Dr. Schulman that Christina claims Linda and her husband often argue and Linda kicks her husband out of the house and he returns the next day. Jaime also claimed that there is nudity in Linda's home, and that according to Christina, she is treated badly in her stepgrandmother's home. Dr. Schulman reported that Jaime appears to have a deep, underlying anger at Linda.

Dr. Schulman recommended that Christina be placed with her mother. Dr. Schulman's recommendation was based on "the mother's more balanced concern, willingness to admit shortcomings, verbal support of the father's role in relation to the child, and her awareness of the emotional problems and risks." Dr. Schulman stated in his report that "the overall impression is that [Linda] is quite sincere, she speaks positively of [Jaime] in a number of respects. *** It appears she is trying to reach a good solution." However, Dr. Schulman stated that his recommendation was "not strongly held on the basis of inadequate evidence." Further, Dr. Schulman stated in his report that "[t]his is a very difficult situation and the recommendations are made hesitatingly due to the particular circumstances" and that "[t]here has been inadequate time for me to win the child's confidence."

Olga Porras testified at trial that Christina gets upset because Linda and her husband are always fighting and they lock Christina in a room and hit Christina on the head with a book.

Bianca Pin and a close friend and co-worker of Linda's, Debbie Gostkiewick, testified that they never observed Linda mistreat Christina in any way.

The trial court also conducted an *in camera* interview with Christina and each parent. The court observed that Christina was shy and clung to her mother, but she was not as shy when in the presence of her father. During the interview with Christina and Jaime, the trial judge asked Christina whom she wanted to live with and she responded, "With my daddy." During the *in camera* interview with Christina and Linda, when the trial judge asked Christina whom she wanted to live with, Christina shrugged her shoulders.

The trial court awarded custody of Christina to Jaime. The trial court acknowledged that both Mr. Johnson and Dr. Schulman favored custody of Christina with Linda. However, the trial court stated that Mr. Johnson's report "was helpful in showing that Christina could be reasonably happy at either home," but it wasn't deep enough and did not have any sort of solid basis. The trial court concluded that "Dr. Schulman's work was helpful because it stimulated the essential analysis of the parties that's required," but the court did not agree with Dr. Schulman's recommendation.

The trial court felt that it could not disregard Christina's statements about turmoil and corporal punishment at Linda's home. The court found that Linda still has problems which impact on her parenting of Christina and must be worked out. Although the court found that both parents love and are dedicated to Christina, it concluded that Jaime is more aware of Christina's nature, Christina is happier at Jaime's house because of the presence of children from Jaime's extended family and there is a better disciplinary atmosphere at Jaime's house. The court stated that Linda has not shown respect for Jaime. The court also found that Christina's school arrangements are better at Jaime's since the school is only two blocks away from Jaime's home and no day care will be required since someone will be home to watch Christina after school. In addition, the court believed that there was violence in Linda's home which was indicative of the stress in the household. Linda appeals from the trial court's order awarding custody of Christina to Jaime.

In determining custody, the primary consideration is the best interest and welfare of the child. (*Cooper v. Cooper* (1986), 146 Ill. App. 3d 943, 497 N.E.2d 805.) Section 602 of the Illinois Marriage and Dissolution of Marriage Act (Act) provides the following factors

which the court is to consider in determining the best interest of the child:

"(a) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved;

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person; and

(7) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." (750 ILCS 5/602 (West 1992).)

The custodial decision rests on temperaments, personalities and capabilities of the parties, and the trial judge is in the best position to evaluate these factors. (*Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 320 N.E.2d 581.) The trial court has broad discretion in determining custody and that determination will not be disturbed unless it is against the manifest weight of the evidence. *In re Marriage of Dall* (1989), 191 Ill. App. 3d 652, 548 N.E.2d 109.

■ Linda claims that the trial court's decision awarding custody of Christina to Jaime was improper because the factors set forth in section 602 of the Act favor Linda with custody. Linda first claims that the trial court placed too much weight on Christina's expressed preference to live with her father. During an *in camera* interview with Christina and Jaime, the trial court asked Christina who she would like to live with and Christina responded that she wants to live with her "daddy." The trial court asked Christina the same question during an *in camera* interview with Christina and Linda. Christina merely shrugged her shoulders in response to the trial court's question. Dr. Schulman correctly points out that significant weight should not be placed on Christina's stated custodial preference since she is too young to appreciate all the nuances of the situation. However, we do not believe that the trial court placed undue weight on Christina's statement that she preferred to live with her father. The court considered not merely Christina's stated preference, but also determined that her preference was corroborated by other evidence in this case as well as her demeanor and testimony at the *in camera* conference.

Linda next contends that the evidence does not support the trial court's conclusion that Christina interrelates better with those at Jaime's house than she does with those at Linda's house. Linda testified that Christina relates well with those at her home, and Jaime testified that Christina interacts well with the members of his household. Dr. Schulman and Mr. Johnson both testified that Christina relates well at each house. There was, however, testimony that Christina had some difficulties getting along with her stepfather and her stepgrandmother. Therefore, we cannot say that the trial court's determination that Christina is happier with the extended family at Jaime's house is against the manifest weight of the evidence.

Linda next contends that the evidence is contrary to the trial court's conclusion that Christina adjusts better at Jaime's home and that Jaime's home provides Christina with a better basis for school attendance. The trial court concluded that Christina would be happier at Jaime's house because Jaime better understands Christina's nature, there are children from Jaime's extended family present and there is a more cohesive and continuous fabric of discipline that fits in better with the spontaneity of a six-year-old. The trial court also concluded that Christina's school arrangements are better at Jaime's house since the school is only a couple of blocks away and Christina will not have to be put in day care since someone is home when she gets home from school.

Linda claims that the evidence does not establish that Christina would adjust better at either home. Where the evidence before the trial court did not clearly favor either party, the reviewing court cannot say that the trial court's decision to place permanent custody of the child with one of the parents was against the manifest weight of the evidence. (*In re Marriage of Wright* (1991), 212 Ill. App. 3d 392, 571 N.E.2d 197.) We therefore conclude that the trial court's decision that Christina adjusts better at Jaime's home is not against the manifest weight of the evidence.

Linda next contends that the trial court erred when it concluded that Linda has mental problems that affect her parenting ability. Linda points out that Dr. Schulman found that Linda has a greater willingness to admit shortcomings and a greater awareness of emotional problems. The trial court agreed with Dr. Schulman and stated that "anybody who's been in therapy that long is going to become more introspective and more aware of their own problems, their own difficulties, any shortcomings and aware of others; and that's a very good thing." However, the trial court further stated that "[a]s far as the mental and physical health of all concerned, it's

fine, except that Linda, I do think, has some trouble she has yet to work out" and that there is physical violence in the home, which is indicative of the stress that is in the household and must also be worked out. The trial court found that Linda's problems "are seriously impacting on her parenting of Christina and which must affect Christina." The court reached this conclusion based on the fact that Linda, although in her mid-twenties, had been married three times and had admitted to marrying Jaime only as a matter of convenience. Furthermore, there were various allegations of fighting and physical abuse between Linda and her current husband as well as allegations that Christina had been physically abused by her mother, stepfather and stepgrandmother. The court apparently found that Linda's behavior exhibited instability which could be harmful to Christina. This decision is not against the manifest weight of the evidence.

Linda next contends that the trial court's conclusion that "there is some physical violence directed by Linda against Christina" is contrary to the weight of the evidence. The trial court concluded that this physical violence "is not of the normal domestic violence nature. We're talking about some spanking, some hitting." The court further stated:

"Christina's statements about the turmoil and corporal punishment cannot be disregarded. They're made too frequently, too spontaneously and they're—unlike Dr. Schulman, I do not conclude that they're simply an example of the imaginings that a six-year-old can be guilty of. Her statements are in keeping with the other evidence in the case and with her demeanor and testimony at the in camera conference. It fits together, I think quite well."

The trial court also reviewed the report from Dr. Schulman which reported Christina's statement that she gets hit by Linda, Dennis, and Dennis' mother. Olga Porras and Jaime also testified that Christina reported to them that she had been hit by those family members. Dr. Schulman stated that Christina did not act like a child who had been hit and that Christina could have made her statements about abuse to curry her father's favor or because Christina had been rehearsed. However, Dr. Schulman had no evidence to support his theories and the trial court was perfectly justified in rejecting these theories. (*Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 320 N.E.2d 581 (the trial court is not required to accept the opinion of the psychiatrist).) From its review of the evidence, the trial court chose instead to believe the witnesses who testified that Linda and members of her household had hit Christina. The trial court was in a better

position to judge the credibility and demeanor of the witnesses, and we do not find that its decision was against the manifest weight of the evidence.

Linda next contends that the evidence does not support the trial court's conclusion that "Linda's attitude toward Jaime has been one of lack of respect for him and lack of recognition for his feelings." Our review of the evidence reveals very little to indicate that Linda lacked respect for Jaime. In fact, the only evidence to support this conclusion is the fact that although Linda was aware that Christina could have been taken care of after school at Jaime's house, Linda chose instead to leave Christina with strangers at day care and then did not give the day care any information with which they could contact Jaime in case of an emergency.

We agree with Linda that the evidence showed that Jaime had more hostility toward Linda than Linda had for Jaime. Dr. Schulman stated that "the overall impression is that [Linda] is quite sincere, she speaks positively of [Jaime] in a number of respects ***. It appears that she is trying to reach a good solution." Dr. Schulman further noted Linda's "verbal support of the father's role in relation to the child." Furthermore, Linda testified that she has no unresolved anger toward Jaime. Dr. Schulman found that Jaime, on the other hand, shows a lack of respect for and an unwillingness to cooperate with Linda and that "one senses a deep underlying anger at his former wife." Dr. Schulman concluded that Jaime's "behavior may eventually have a negative influence on Christina's overall welfare." Furthermore, Mr. Johnson felt that Jaime would go to any length to destroy Linda's character. Linda also testified that Jaime speaks negatively of her in front of Christina. There was no allegation that Linda speaks negatively of Jaime in front of Christina. Accordingly, the evidence indicates that Linda would better facilitate a relationship between Christina and Jaime.

Linda claims all the factors discussed above tipped in favor of an award of custody to Linda and that, at a minimum, demonstrated that all factors are equal and the court should award custody to the parent who had been the primary caretaker of Christina prior to the custody dispute. The trial court found that each of the section 602 factors favored Jaime. We find the trial court's findings as to only one of these factors to be against the manifest weight of the evidence.

Although the psychiatrist and social services worker recommended that Linda have custody of Christina, these recommendations are not controlling. (*In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 463 N.E.2d 773; *In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 434 N.E.2d 811.) "A recommendation concerning the custody

of a child is only that, a recommendation ***. Clearly, a trial court is free to evaluate the evidence presented and accept or reject it in whole or in part." (*In re Marriage of Felson* (1988), 171 Ill. App. 3d 923, 928, 525 N.E.2d 1103, 1106.) Furthermore, Dr. Schulman stated that his opinion that Linda be awarded custody was not strongly held since he did not have sufficient time to evaluate the situation.

The trial court had the opportunity to evaluate the credibility, temperaments, personalities, and capabilities of both parties and to determine what weight to place on the testimony of the witnesses. The trial court also had an opportunity to observe and evaluate Christina. The trial court stated, "I tend to pay a lot of attention to the—to what the child does and doesn't do, and how the child acts or doesn't act, about the child generally, in the presence of each. There is a distinct difference; there is no question about that." The trial court found that Christina was happier with her father and that her father could provide a more stable environment for Christina. We cannot say that the trial court's decision was against the manifest weight of the evidence.

■ Linda lastly contends that the trial court relied on inadmissible hearsay. Linda claims that Olga Porras gave inadmissible hearsay testimony regarding Linda hitting Christina. Even if Linda had not waived this issue by her failure to raise it at trial, a decision on the merits of this issue would have no impact on our decision here. Testimony similar to that of Olga Porras was properly admitted at trial, and regardless, the court stated that "the physical and corporal punishment, the spanking, is not the most critical factor here."

Accordingly, the trial court's decision awarding custody of Christina to her father is affirmed.

Affirmed.

MURRAY, P.J., and COUSINS, J., concur.