RICHARD EDWIN LANE, Plaintiff-Appellee, *v.* PAULINE FERN LANE, n/k/a Pauline Fern Robinette, Defendant-Appellant.

Third District    No. 75-346

Opinion filed July 22, 1976.

Frederick A. Bernardi, of Pekin, for appellant.

Jerard Serritella, of Peoria, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This appeal is from the judgment of the circuit court of Tazewell County granting permanent custody of the parties' two minor children to the children's father, plaintiff Richard Lane, and denying the petition for attorney fees of the children's mother, defendant Pauline Fern Lane, now known as Pauline Fern Robinette.

The parties were married in March 1965. Their son Roy was born in December 1965 and their daughter Tammy was born in August 1969. Plaintiff, Richard Lane, was granted a divorce in December 1973 on grounds of adultery. He was found to be a fit and proper person to have

the sole care, custody, control and education of the minor children. Service on defendant was by publication and the issue of the custody of the minor children was ordered held in abeyance until such time as personal jurisdiction over defendant could be obtained. Plaintiff later petitioned to modify the decree of divorce on the ground defendant had abandoned the two children. An order was entered in May 1974 awarding plaintiff the sole care, custody, control and education of the minor children. In April 1975 defendant petitioned to vacate the order of custody on the ground plaintiff's verified allegations in his petition to modify the decree were untrue and plaintiff knew they were untrue. On May 21, 1975, a hearing was held on defendant's petition to vacate the order granting custody to Richard Lane. The order of May 21, 1974, granting custody to plaintiff was vacated by order on May 21, 1975, on the ground plaintiff failed to give notice and opportunity to be heard to defendant. A hearing was held on June 18 and 19, 1975, to determine the question of custody. Defendant also petitioned for attorney fees incurred in successfully vacating the order of May 21, 1974, and in preparation for and representation at the June 1975 hearing. On June 30, 1975, the court entered an order awarding the sole care, custody, control and education of the two minor children to plaintiff, Richard Lane. On September 15, 1975, the court entered an order denying defendant's petition for attorney fees and expenses.

On this appeal defendant, Pauline Lane, raises three issues: one, whether the judgment entered by the trial court awarding custody of the two minor children to Richard Lane was contrary to the manifest weight of the evidence; two, whether the trial court erred in failing to award custody of the parties' six-year-old daughter to Pauline Fern Lane; and, three, whether the trial court abused its discretion by denying Pauline Fern Lane's petition for attorney fees.

Two general rules of law govern our resolution of the first two issues. They are: one, the paramount consideration in awarding the custody of minor children to one parent or the other must necessarily be the welfare and best interests of the children; and two, in making a custody award the determination is one within the discretion of the trial court and such exercise of discretion will not be set aside unless it appears the judgment is against the manifest weight of the evidence. (*Look v. Look*, 21 Ill. App. 3d 454, 315 N.E.2d 623; *Anagnostopoulos v. Anagnostopoulos*, 22 Ill. App. 3d 479, 317 N.E.2d 681; *Huey v. Huey*, 25 Ill. App. 3d 20, 322 N.E.2d 560.) We note here there is great conflict in the evidence and no useful purpose would be served by treating the testimony in any great detail. We need deal here with the evidence only in sufficient detail to determine whether the trial court's finding was or was not against the manifest weight of the evidence.

During the latter years of the marriage the parties made their home in East Peoria, Illinois. For a period of time prior to the separation of the parties in December 1973, Roy Robinette, Richard Lane's uncle, and Carl Christianson, Richard Lane's half brother, resided with the parties in East Peoria. At the time Pauline left the marital residence in September of 1973 she was accompanied by Roy Robinette who she married on October 5, 1974. Pauline, Roy Robinette and the children went to Danville, Arkansas, where they lived until January 1974, at which time they moved to Plainview, Arkansas. In November 1973, Richard Lane initiated proceedings for divorce from Pauline in which he submitted an affidavit he was unaware of the whereabouts of Pauline.

Included among the evidence presented by defendant-appellant, Pauline Lane, was testimony she would have to take the children to the babysitter by herself in the middle of the night while plaintiff was either sleeping or just out. Defendant claims the plaintiff threatened her by clicking a welder's arc striker near her and by running a roller on the wall outside of her room. Defendant claims the plaintiff committed perjury when he filed his original petition for custody on May 21, 1974, by stating defendant returned to the State of Illinois subsequent to the divorce decree and abandoned the minor children and left them with plaintiff. She claims he also perjured himself by stating he did not know the whereabouts or address of defendant. She stated that in December 1973, one day after plaintiff obtained the divorce from the defendant, he married a 21-year-old girl and divorced her three months later. After this marriage, with the aid of the East Peoria Police Department, plaintiff determined the whereabouts of defendant and the children and made a trip to Arkansas. At that time he asked Pauline to return with him to Illinois. She and the children returned to Illinois with plaintiff on that same day with the intention of being remarried. She testified that upon realizing she no longer loved plaintiff she contacted Roy Robinette in Arkansas and requested him to come to Illinois to be with her. After a period of about two weeks they returned to Arkansas. During this journey defendant told plaintiff she loved Roy Robinette. Plaintiff completed the trip to defendant's residence in Arkansas and on the next day, accompanied by the minor children, returned to East Peoria. The evidence is conflicting regarding whether an agreement was made at this time concerning the permanent custody of the plaintiff's children. Defendant claims she only agreed plaintiff could visit with the children. Plaintiff claims she gave him permanent custody of the children.

Defendant also testified that at the time plaintiff took custody of the children in May 1974, he was on probation for indecent exposure. Other testimony by defendant included her claim the marriage between the parties was replete with instances where Richard Lane showed absolutely

no love or concern for the parties' two minor children. On her own behalf defendant testified that in 1965 when she married plaintiff she possessed $10,000 which she had inherited from her father and when she left plaintiff in September 1973, she had nothing. She testified the money was spent to buy cars, motorcycles and trucks and the money she earned was used to buy clothing and shoes for the children and the remainder went to plaintiff who squandered it. She testified as to one instance where the parties' youngest child ran her arm through a glass door and although plaintiff knew defendant had a phobia about the sight of blood he instructed her to drive the child to the hospital while he went to sleep. There is testimony by others that defendant was a good mother.

Since January 1974, defendant and her present husband, plaintiff's uncle with whom defendant admitted having relations while still living with plaintiff, have lived in a rural area in Arkansas. Several of plaintiff's witnesses testified the residence was dirty and lacked sufficient furniture. Defendant's brother, on the other hand, testified the residence was very clean.

Plaintiff testified that in May 1974, defendant told him to keep the children. Defendant denied this. Between May 1974, and December 1974, defendant made no attempt to contact her children. She testified this was because she didn't want to upset her son Roy. Roy testified at the hearing he preferred to stay with his father.

On behalf of plaintiff there was evidence he had worked at Caterpillar Tractor Company for 10 years, was presently married, and had recently bought a home. There was also testimony that since his release from psychiatric therapy he has had no problems with the law or sex. There was considerable conflicting testimony on both sides. The evidence reveals that neither of the parties can be considered ideal parents but since plaintiff was not shown to be unfit as a matter of law, the court did have discretion in its decision. The trial judge was in the best position to judge the credibility of the witnesses. It is not our job as a court of review to sit as the trier of fact. We hold the trial court's finding was not against the manifest weight of the evidence.

The second issue raised by defendant is whether the trial judge erred by failing to award custody of the parties' six-year-old daughter to defendant, her mother. Defendant cites *Huey v. Huey,* 25 Ill. App. 3d 20, 322 N.E.2d 560, and *Nye v. Nye,* 411 Ill. 408, 105 N.E.2d 300, to support her position the trial court erred in failing to award her custody of her six-year-old daughter. On the basis of the so-called tender years doctrine defendant attempts to harmonize her position with the provision of the 1970 Illinois Constitution which provides that equal protection of the law shall not be denied or abridged because of sex (Ill. Const. 1970, art. I, §18). She claims the tender years doctrine derives from a common

understanding of a young child's maternal needs. The crux of this doctrine is that maternal affection is more active and better adapted to the care of the child and this is especially true in the case of a minor daughter. (*Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300.) In a recent appellate decision, *Huey v. Huey*, 25 Ill. App. 3d 20, 322 N.E.2d 560, the court cited *Nye* for the rule that compelling evidence must be presented in proving the mother to be an unfit person to cause the custody of her minor daughter to be denied her or there must be a positive showing that the best interests of the child would be served by denying custody to the mother. However, the validity of the doctrine is weakened by other recent cases. In *Anagnostopoulos v. Anagnostopoulos*, 22 Ill. App. 3d 479, 317 N.E.2d 681, the court stated, "While giving custody to the mother may be the usual result of a custody hearing, there is no rule in Illinois that unless she is shown to be unfit, custody should be given to the mother. [Citation.] Furthermore, our 1970 Illinois Constitution provides that equal protection of the law shall not be denied or abridged because of sex." See also *Marcus v. Marcus*, 24 Ill. App. 3d 401, 320 N.E. 2d 581; *Pratt v. Pratt*, 29 Ill. App. 3d 214, 330 N.E.2d 244; *Kauffman v. Kauffman*, 30 Ill. App. 3d 159, 333 N.E.2d 695; and *Christensen v. Christensen*, 31 Ill. App. 3d 1041, 335 N.E.2d 581.

■■ The issue here is whether the custody award was in the best interests of the child. The trial court found the best interests of both children would be served by granting their custody to their father and we cannot hold as a matter of law that such holding was contrary to the manifest weight of the evidence. Accordingly, we hold it was not error for the trial court to deny custody of the parties' six-year-old daughter to her mother.

■■ The third issue is whether the trial court erred in denying defendant's verified petition for attorney fees. The general rule regarding the allowance of attorney fees is that the awarding of such fees in a divorce proceeding rests in the sound discretion of the trial court and will not be interfered with unless such discretion is clearly abused. (*Canady v. Canady*, 30 Ill. 2d 440, 197 N.E.2d 42.) In the instant case Pauline Lane alleged in her verified petition that she was unable and Richard Lane was able to pay the attorney fees incurred both in successfully vacating the order of May 21, 1974, and in preparation for and representation at the custody hearing in June 1975. There is nothing in the evidence or pleadings denying Pauline Lane's verified petition regarding the parties' relative abilities to pay attorney fees. In fact, the evidence indicates plaintiff is able to pay such fees. Apparently there is no dispute as to the reasonableness of such fees. For these reasons we hold the trial court abused its discretion in denying defendant attorney fees.

For the foregoing reasons the judgment of the circuit court of Tazewell

County is affirmed insofar as it awards custody of the minor children to plaintiff. Insofar as the trial court disallowed attorney fees to defendant the judgment is reversed and remanded for proceedings consistent with the foregoing.

Judgment affirmed in part and reversed and remanded in part.

STENGEL and BARRY, JJ., concur.