BEVERLY K. COURSON, n/k/a Beverly K. Hrdlicka, Plaintiff-Appellee, v. DAVID R. COURSON, Defendant-Appellant.

Third District   No. 76-67

Opinion filed April 13, 1977.

Kerry R. Cordis, of Princeville, for appellant.

W. Thomas Johnston, of McConnell, Kennedy, Quinn & Morris, of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Peoria County denying the petition of David R. Courson, hereinafter referred to as the petitioner, which sought to modify a decree of divorce which was entered by the Circuit Court of Peoria County and which divorced the petitioner and Beverly K. Courson, hereinafter referred to as the respondent.

The petitioner attempted to modify the divorce decree as to the custody of two minor children, namely Melissa, born April 21, 1966, and Jennifer, born January 21, 1969. The respondent filed a counterclaim seeking various relief, some of which was granted and some of which was denied. In this appeal by the petitioner the respondent seeks review only of that portion of the trial court's order which denied her prayer for attorney fees.

The first issue presented for review is whether the denial of the petitioner's request for a change of custody of the minor children was against the manifest weight of the evidence and therefore constitutes reversible error. In order to determine this issue it is necessary that facts adduced during the hearing before the trial court be set forth for examination.

The petitioner in praying for a change of custody order relies heavily upon several factors. It is his contention that even though the divorce decree awarded custody of the children to his former wife, the respondent, she did not accept such award, but that on the contrary, with the exception of approximately 6 months out of 4½ years, he has had custody of the children. The evidence in this case supports a finding that the respondent did in fact voluntarily relinquish custody of the children to the petitioner for lengthy periods of time.

The respondent remarried on February 14, 1972, and the petitioner elicited testimony from the new spouse, James Hrdlicka, that in the past he had committed some acts demonstrating a lack of moral fitness. To be specific, Hrdlicka testified that in January of 1972 he pled guilty to the offense of attempting to take indecent liberties with an 8-year-old female child and for this offense he was placed on probation for a period of 36 months and one of the terms of the probation was that he was to be imprisoned at the penal institution in Vandalia for a term of 9 months. Hrdlicka served this term of imprisonment and after 18 months was released from probation on the recommendation of the probation officer. There was further testimony to the effect that this witness was on one other occasion charged with taking indecent liberties with a child and on another occasion with the offense of indecent exposure, but no action was taken on these charges. Hrdlicka appeared voluntarily to testify in the trial court hearing and stated that for a period of 4 to 6 weeks in his life he was under the influence of various drugs and alcohol. He stated that he was so greatly under the influence of drugs that he had but a vague memory of these events. He further stated that the respondent is his third wife and a child was born during his first marriage, but he has not seen the child since 1967 nor has he supported it. After his release from Vandalia, Hrdlicka married the respondent, became a welder at Caterpillar Tractor Company and claims that from the time of his imprisonment in January 1972, he has never used drugs or been arrested for any offense, even a traffic violation.

The respondent testified that after her divorce from the petitioner she was forced to yield custody of her children to him because he refused to make child support payments in the sum of $50 a week as provided for in the divorce decree. The petitioner was at all times employed and on occasion worked at two jobs, yet from the record it is abundantly clear that he was averse to making child support payments. At no time did he ever make a full payment. While the petitioner claimed that on occasion he gave the respondent cash for the purchase of necessities, during the hearing on his petition he was able to produce cancelled checks payable to the respondent in the total sum of $577. At the conclusion of the hearing

the trial court found that the petitioner owed the respondent the sum of $1,267 for unpaid child support.

Testimony was further adduced during the course of the hearing that the petitioner after his divorce from the respondent sold their marital residence to his girl friend, who was later to become his wife, for the sum of $9,000. According to the petitioner's testimony the residence originally cost approximately $4,000 and with the money derived from the sale he paid certain indebtedness and then gave the respondent the sum of $157. The divorce decree provided that the respondent was to receive the entire balance of any proceeds from the sale after the payment of certain indebtedness. From the record we are unable to ascertain just what debts and in what amount were paid by the petitioner. While the petitioner as a sideline business prepared income-tax returns, during the hearing before the trial court he was quite forgetful and evasive when it came to answering questions concerning his own financial affairs. We do glean from the record, however, that while the petitioner was failing to pay child support he was making $400 per month car payments when required to pay $130 per month.

It should be noted that when the petitioner first obtained custody of the minor children he placed them with his girl friend with whom he was living and was later to marry. This arrangement lasted for approximately 4 months. The petitioner's present wife testified that she had not been previously married but had given birth to two children whom she placed with an agency for adoption. The petitioner's wife is employed earning $550 a month and assumes the mortgage payments on their home.

There is also testimony in the record from the respondent's sister and a friend of the sister that when they were 14 or 15 years of age they would baby-sit with the minor children of the petitioner and respondent which was at times prior to their divorce. The testimony of these two witnesses served to taint the moral character of the petitioner in that it was stated that on several occasions he made sexual advances to the sister by touching or fondling her.

It was the respondent's testimony that after her marriage to Hrdlicka and their financial problems became less severe that she wanted to have the custody of the minor children and hence she so notified the petitioner and resisted in court his effort to modify the decree.

■■ We have set forth in considerable detail the factual situation in the cause before us. Turning our attention to the applicable law we recognize at the outset that the paramount consideration in awarding custody of minor children is the welfare and best interests of the children. (See *Brady v. Brady* (1975), 26 Ill. App. 3d 131, 324 N.E.2d 645; *Miezio v. Miezio* (1955), 6 Ill. 2d 469, 129 N.E.2d 20; *Nye v. Nye* (1952), 411 Ill. 408, 105

N.E.2d 300.) In the instant case we have an abundance of evidence which reflects that both the petitioner and respondent are possessed with human problems and frailties, yet neither of the parties could be classified as an unfit parent, nor do either of them claim the other is such. Testimony before the trial court showed that both parties at the time of the hearing resided in homes that were quite adequate for the raising of children. There is no evidence that the minor children are beset with any problems of health. The petitioner, however, claims that there has been a change of circumstances and that the best interests of the children would be served by a modification of the divorce decree which would award him custody. The "change of circumstances" relied on by the petitioner is that subsequent to the divorce proceedings the minor children were in his care the great majority of the time. The evidence supports a finding that out of a period of approximately 4½ years the children were with the respondent mother not over 6 months. The record in this case, however, supports another finding to the effect that subsequent to the divorce of the parties the respondent mother was in dire financial straits and was unable to perform her duties as a mother. This case is not unlike the case of *Miezio v. Miezio* (1955), 6 Ill. 2d 469, 129 N.E.2d 20, where Mr. Justice Schaefer of our supreme court observed that the father made it difficult for the mother to perform her parental duties since the father did not provide support in any degree. In the instant case the petitioner provided some child support but it was indeed minimal. The record establishes the fact that the petitioner was a penurious individual when it came to complying with the child support payments of the divorce decree. Not once did the petitioner ever make a full child-support payment, yet at times he worked at two jobs, he also had a sideline business of preparing income tax returns, his present wife was gainfully employed and paid mortgage payments on their home, he further prepaid the installment loan payments on his automobile and certainly took advantage of the respondent when their marital residence was sold subsequent to their divorce. Such a course of conduct on the petitioner's part could only make it difficult if not impossible for the respondent to perform her duties as a mother. We may well have a "change of circumstances" as alleged by the petitioner; however, such change was in no small part caused by his conduct, which was less than admirable.

We cannot help but note that a change of circumstances also occurred as far as the respondent mother is concerned to the effect that after struggling to support and maintain herself she became a beautician and later married a man who is steadily employed. Her financial circumstances improved to the extent that she could provide her children with a good home and the other necessities of life.

We have before us for review a case where the evidence is conflicting as to what parent should be awarded custody of the minor children so that their welfare and best interests would be served. The moral fitness of the respondent's present husband is questioned and there is testimony that most certainly taints the moral fitness of the petitioner.

In view of the particular importance of weighing the evidence and determining the character of the conflicting parties in a case of this type we deem it our duty to entrust the trial court with broad discretion. The trier of fact has significant opportunity to observe both parents, the children and other witnesses and thus evaluate their temperaments, personalities, demeanor and capabilities. This is a vital and important link in the chain of judicial decision. (See *Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 320 N.E.2d 581, and *Corcoran v. Corcoran* (1967), 79 Ill. App. 2d 328, 224 N.E.2d 611.) We should not disturb the determination of the trial court in this type of case unless it has resulted in manifest injustice or is against the manifest weight of the evidence. (See *Randolph v. Dean* (1975), 27 Ill. App. 3d 913, 327 N.E.2d 473.) It was stated in *Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 409, 320 N.E.2d 581, 586:

> "* * * the presumption in favor of the result reached by the trial court is always strong and compelling in this type of case."

■■ In the instant case the trial court had the opportunity to observe the parties as they testified as well as the other witnesses. The trial court further had an "in camera" interview with the minor children. In short, the trial court was in the best position to evaluate the situation, with a view as to what would be in the best interests of the children. While we may not have reached the same conclusion had we conducted the hearing, we cannot say that it was against the manifest weight of the evidence.

■■ The second issue presented for our determination is raised by the respondent in that she claims the trial court should have granted her prayer contained in her cross petition for the allowance of attorney's fees. With this contention we agree. The incurrence of attorney fees by the respondent was required by circumstances created by the petitioner. The general rule regarding allowance of attorney fees is that such awarding rests in the sound discretion of the court and will not be interfered with unless such discretion is clearly abused. (*Lane v. Lane* (1976), 40 Ill. App. 3d 229, 352 N.E.2d 19.) In the instant case the evidence shows that the respondent sold some personal property and borrowed some money to pay one-half of her attorney's fees. She executed a note for another portion of the fees. The petitioner has not responded in brief nor in oral argument regarding this issue. The evidence indicates that the petitioner is able to pay reasonable attorney fees incurred by the respondent. For these reasons we hold that the trial court abused its discretion in denying

the respondent reasonable attorney's fees. See *Brady v. Brady* (1975), 26 Ill. App. 3d 131, 324 N.E.2d 647, and *Lane v. Lane* (1976), 40 Ill. App. 3d 229, 352 N.E.2d 19.

For the foregoing reasons the order of the Circuit Court of Peoria County is affirmed in so far as it denied the petition to change custody of the minor children; however, insofar as the trial court disallowed attorney fees to the respondent, that portion of the order is reversed and this cause is remanded to the trial court for the fixing and allowance of reasonable fees.

Judgment affirmed in part and reversed and remanded in part.

STENGEL, P. J., and BARRY, J., concur.